**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:
**1800 BETHUNE LOFTS LLC,**

Debtor.
______________________________________/

Case No. 26-48983-mlo
Chapter 11
Hon. Maria L. Oxholm

# FIRST DAY MOTION COVER SHEET FOR MOTION FOR USE OF CASH COLLATERAL, REGARDING ADEQUATE PROTECTION AND RELATED RELIEF

The Debtor has filed the above-captioned motion, which follows this Cover Sheet. In accordance with LBR 4001-2(b) (E.D. Mich.), the Debtor identifies below the location in the proposed interim order of each provision listed on the Court's required cash-collateral cover sheet.

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | ___ Yes X No | None; Proposed Interim Order ¶¶ 5, 11(c) expressly exclude Chapter 5 claims and proceeds. |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor other than liens granted solely as adequate protection against diminution in value of prepetition collateral. | ___ Yes X No | None; replacement liens are limited to the same types, same extent, and same priority, solely to the extent of diminution. Proposed Interim Order ¶ 5. |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | ___ Yes X No | None; the Proposed Interim Order preserves the status quo for rent collection pending the final hearing but creates no self-executing stay-relief procedure. Any stay relief requires further order. |

| | | |
|---|---|---|
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | ___ Yes X No | None; all challenges, MUARA issues, and estate claims are reserved. Proposed Interim Order ¶¶ 5, 11. |
| (5) Provisions that prime any lien without that lienholder's consent. | ___ Yes X No | None; Proposed Interim Order ¶ 5. |
| (6) Provisions that relate to a sale of substantially all of the Debtor's assets. | ___ Yes X No | None. |
| (7) Provisions for the payment of professional fees of the Debtor or any committees, including any carve-outs for such payments. | ___ Yes X No | Budget contains a Debtor counsel fee reserve only; no payment from cash collateral is authorized absent allowance and further Court approval. Proposed Interim Order ¶ 4(b). |
| (8) Provisions for the payment of prepetition debt. | X Yes ___ No | Limited to proposed $42,000 monthly adequate-protection payments to Churchill MRA Funding I LLC; otherwise none. Proposed Interim Order ¶¶ 4(a), 5(a), 11(f). |
| (9) Provisions that waive the Debtor's exclusive right to file or solicit acceptances of a plan during the periods specified in 11 U.S.C. § 1121. | ___ Yes X No | None. |
| (10) Provisions that require the Debtor's plan to be on terms acceptable to the secured creditor. | ___ Yes X No | None. |
| (11) Provisions that require or prohibit specific terms in the Debtor's plan. | ___ Yes X No | None. |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | ___ Yes X No | None. |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | ___ Yes X No | None; Proposed Interim Order ¶¶ 5, 11(d) expressly preserve § 506(c). |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | ___ Yes X No | None. |

| | | |
|---|---|---|
| (15) Provisions that prohibit the Debtor from seeking approval to use cash collateral without the secured creditor's consent. | ___ Yes X No | None. |
| (16) Provisions that purport to bind a subsequent trustee. | ___ Yes X No | None. |
| (17) Provisions that obligate the Debtor to pay any secured creditor's professional fees. | ___ Yes X No | None. |

Dated: August 17, 2026

/s/ Robert N. Bassel
ROBERT N. BASSEL (P48420),
Attorney for Debtor
P.O. Box T, Clinton, MI 49236
(248) 677-1234 | bbassel@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:
**1800 BETHUNE LOFTS LLC,**

Debtor.

Case No. 26-48983-mlo
Chapter 11
Hon. Maria L. Oxholm

_______________________________________/

# DEBTOR'S FIRST DAY MOTION FOR USE OF CASH COLLATERAL, REGARDING ADEQUATE PROTECTION AND RELATED RELIEF

1800 Bethune Lofts LLC ("Debtor"), moves for entry of an interim and final order authorizing the Debtor to use alleged cash collateral, providing adequate protection, and granting related relief. Debtor states:

## GENERAL AVERMENTS AND RELIEF REQUESTED

1. Debtor is an 83-unit apartment complex in Detroit, Michigan which has undergone substantial renovations and currently has approximately 65 rented units. Debtor proposes to pay the contractual $42,000 per month adequate protection payments to its primary lender pursuant to the attached proposed 13-week Budget, and to grant a replacement lien, in addition to other forms of adequate protection.

2. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 12, 2026 and continues to operate and

manage its property as debtor in possession under 11 U.S.C. §§ 1107 and 1108.

3. The Debtor seeks authority under 11 U.S.C. §§ 105, 361, 362, 363, 541, 552, 1107, and 1108, Fed. R. Bankr. P. 4001(b), and LBR 4001-2 (E.D. Mich.) to collect and use alleged cash collateral in the ordinary course of operating the apartment complex, in accordance with the 13-week cash collateral budget attached as Exhibit A (the "Budget").

4. Pending a final hearing, the Debtor requests authority to use alleged cash collateral in an amount necessary to avoid immediate and irreparable harm. The Debtor requests authority to make cash disbursements in accordance with the Budget, with a fifteen percent (15%) variance per operating-expense line item and a separate aggregate cap of $58,341 in any budget week through the conclusion of the final hearing. The aggregate cap is an overall ceiling and does not increase the permitted variance for any individual operating-expense line item. The $42,000 monthly lender-payment line is fixed and is not subject to an upward variance absent written consent or further Court order. For the full 13-week period, the revised Budget projects total

cash outflows of $194,968.08, including $84,000 in proposed adequate-protection payments to Churchill MRA Funding I LLC.

5. This Motion is filed without prejudice to the Debtor's right to challenge the amount, validity, priority, extent, perfection, enforceability, or avoidability of any asserted claim, mortgage, assignment of rents, lien, security interest, setoff right, or other interest. By seeking interim authority to use alleged cash collateral, the Debtor does not admit that any creditor has a valid, perfected, enforceable, unavoidable, or non-avoidable interest in any rent, deposit account, receivable, or other property of the estate.

6. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this District.

**THE DEBTOR AND THE PROPERTY**

7. The Debtor owns and operates the apartment complex commonly known as Bethune Lofts at 1800 West Bethune Street, Detroit, Michigan 48206 (the "Property"). The Property was formerly abandoned and deteriorated and was substantially rehabilitated with significant capital investment. It is now an operating residential

community with renovated apartments, property-management and maintenance services, and security.

8. The physical rehabilitation is substantially complete; the immediate reorganization challenge is to preserve operations and stabilize occupancy and collections rather than undertake another major redevelopment.

9. Continued operation is important to preserve the Property's value, housing for existing residents, and the ongoing relationships with workers, contractors, and vendors that operate and maintain the Property. An interruption in operations or inability to pay essential postpetition expenses would risk deterioration of the Property, loss of tenants and rents, service interruptions, and a reduction in value available to creditors.

10. A Newmark Valuation & Advisory appraisal dated May 12, 2026, with a valuation date of May 5, 2026, states a Market Value "As Is" of $8,900,000 for the leased-fee interest, and a present value of the remaining OPRA tax-abatement benefit of $840,000. The appraisal describes the building as significantly renovated in 2022-23.

## CHURCHILL CLAIM AND ALLEGED CASH COLLATERAL

11. Churchill MRA Funding I LLC ("Churchill" or "CMRA") asserts that it is the current assignee of a loan originally made to the Debtor on or about May 10, 2022 in the original principal amount of $8,877,500. Churchill asserts rights under a note, loan agreement, mortgage, assignments, and related loan documents. A prepetition state-court complaint filed by Churchill alleges an 8.5% contract interest rate and a maturity date, as modified, of December 1, 2025. The Debtor has not completed its claims and lien analysis and reserves all rights.

12. Churchill's prepetition complaint alleges that a March 9, 2026 default notice demanded $10,591,634.04 as principal and interest due as of March 6, 2026, and further alleges that, as of June 26, 2026, Churchill had been damaged in an amount of at least $10,751,384.12, plus continuing interest, late fees, costs, and attorney fees. The complaint also alleged unpaid 2024 property taxes of $19,535.11. The Debtor states that the 2024 property taxes of $19,535.11 have been paid as of the filing of this Motion. The Debtor does not admit the amount,

allowance, secured status, charges, default calculations, or other components of Churchill's claim.

13. Churchill commenced a prepetition action in the Wayne County Circuit Court, Case No. 26-011563-CB, seeking, among other relief, foreclosure and appointment of a receiver to manage the Property and collect and disburse income and profits. Churchill is expected to contend that it filed and served its motion to appoint a receiver on July 8, 2026 and thereby enforced its assignment of rents under Mich. Comp. Laws § 554.1058.

The Chapter 11 petition was filed before the scheduled hearing on the receiver motion. No receiver was appointed before the Petition Date, and no receiver has been appointed in the state-court action. The Debtor does not concede that Churchill satisfied every requirement of § 554.1058 or that the legal consequence asserted by Churchill follows from any such enforcement.  Even if it had, as indicated below, Churchill would have only a security interest in the rents rather than outright ownership. Mich. Comp. Laws § 554.1054(2) (an assignment of rents "creates a presently effective security interest" in rents "regardless of whether the document is in the form of an absolute

assignment ... or any other form"); 11 U.S.C. § 541(a)(1). Because the rents therefore continue to be property of the estate, the Debtor is required to provide adequate protection in order to use them.

14. For purposes of obtaining interim relief only, the Debtor treats postpetition rents, tenant payments, rent receivables, deposit-account funds derived from rents, and proceeds as alleged cash collateral under 11 U.S.C. § 363(a), subject to the Debtor's full reservation of rights regarding any mortgage, assignment of rents, perfection, enforcement, and the effect of 11 U.S.C. §§ 541 and 552 and applicable nonbankruptcy law. For purposes of LBR 4001-2(a), the Debtor's present position as to value is that the Property is worth no less than $8,900,000 based on the May 2026 Newmark appraisal.

## THE MICHIGAN UNIFORM ASSIGNMENT OF RENTS ACT

15. Churchill may argue that filing and timely service of its receivership motion constituted a demand-notice enforcement under Mich. Comp. Laws § 554.1058 and that enforcement caused the rents to cease being property of the Debtor. Even assuming § 554.1058 was satisfied, the asserted ownership consequence does not follow from the

current Michigan Uniform Assignment of Rents Act ("MUARA"), 2022 PA 115, Mich. Comp. Laws §§ 554.1051-.1070.

15(a). The current Michigan Uniform Assignment of Rents Act ("MUARA") provides that rather than transferring ownership ". . . an assignment of rents creates a presently effective security interest in all accrued and unaccrued rents arising from the real property described in the document creating the assignment, regardless of whether the document is in the form of an absolute assignment, an absolute assignment conditioned upon default, an assignment as additional security, or any other form." MCL §554.1054(2). The 2022 Michigan Uniform Assignment of Rents Act clarifies that assigned rents now constitute cash collateral in a Chapter 11 case. "Under the MUARA, it appears that rents will once again constitute cash collateral that can be used by a SARE debtor subject to the provision of adequate protection to the secured creditor." James L. Allen, Robert N. Bassel & Hon. Paul R. Hage, The New Michigan Uniform Assignment of Rents Act, 42 Mich. Bus. L.J. 46 (Fall 2022).

16. Town Center Flats, LLC v. ECP Commercial II LLC, 855 F.3d 721 (6th Cir. 2017), held under Michigan's former assignment-of-rents

statute that, after certain steps were taken, an assignment could transfer ownership of rents so that the rents were not property of the bankruptcy estate. Town Center Flats predates MUARA. The Legislature repealed the former statutes upon which Town Center Flats was decided, including 1953 PA 210, Mich. Comp. Laws §§ 554.231-.233, when MUARA became effective on September 22, 2022. See Mich. Comp. Laws § 554.1070.

17. MUARA expressly governs enforcement, perfection, and priority even when the document creating the assignment was signed and delivered before the Act's effective date. Mich. Comp. Laws § 554.1069(1). The savings provisions preserve actions commenced before the effective date and preexisting enforceability, perfection, and priority. Id. § 554.1069(2)-(3). Here, the loan and assignment are alleged to date from May 2022, but Churchill's own allegations place maturity, default, and enforcement efforts in 2025 and 2026, and the state-court proceeding was commenced in 2026. Thus, Churchill's current enforcement rights are governed by MUARA; to the extent its interest was already perfected before MUARA, the Act preserves that perfection as a security interest.

18. The operative ownership point is supplied by Mich. Comp. Laws § 554.1054(2): an assignment of rents creates a presently effective security interest in accrued and unaccrued rents "regardless of whether the document is in the form of an absolute assignment, an absolute assignment conditioned upon default, an assignment as additional security, or any other form." MUARA therefore treats the interest as a security interest even when the loan documents use absolute-assignment language. Contract provisions describing the assignment as absolute or irrevocable, revoking the Debtor's license to collect after default, or requiring rents to be held for the lender do not change the statutory classification of the assignee's interest under MUARA.

19. Because the Debtor owns the Property and retains legal and equitable interests in the rent stream subject to Churchill's asserted security interest, the rents fall within 11 U.S.C. § 541(a)(1) and (6) and, to the extent Churchill has a valid interest, constitute cash collateral under § 363(a). Section 552(b)(2) recognizes the continued postpetition effect of a prepetition security interest in rents, expressly subject to § 363 and other Bankruptcy Code provisions. The consequence is not that

Churchill's interest disappears; it is that the Debtor may use the rents only by consent or Court authorization with adequate protection.

## USE OF CASH COLLATERAL AND THE 13-WEEK BUDGET

20. The revised Budget covers August 13, 2026 through November 11, 2026. It projects total revenue of $224,952.00, total cash outflows of $194,968.08, aggregate net cash flow of $29,983.92, and ending cash of $38,983.92. The maximum projected cash outflow in any budget week is $50,731.00. The requested $58,341 weekly cap is a separate aggregate ceiling, set approximately fifteen percent above the highest projected weekly cash outflow to accommodate timing differences and ordinary operating variances within the Budget. It does not increase the permitted fifteen percent (15%) variance for any individual operating-expense line item or permit any increase in the fixed $42,000 lender-payment line. The requested authority remains limited to cash actually available in the Debtor's debtor-in-possession accounts and does not authorize overdrafts or deficit spending.

21. The revised Budget includes ordinary and necessary postpetition costs for payroll and leasing, DTE/water/sewer utilities,

insurance, security, eviction-related legal services, property management and maintenance, disposal, lawn and pest control, a reserve for postpetition real-property-tax accruals, U.S. Trustee quarterly fees, and a Debtor counsel fee reserve. The tax reserve is intended only to keep taxes current as postpetition obligations accrue; it does not authorize payment of any disputed or otherwise unauthorized prepetition claim. The Debtor's counsel line is a reserve only. No payment to Debtor counsel or any other retained professional is authorized except under the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further order of the Court.

22. The Budget includes two $42,000 lender payments, in Weeks 5 and 10, for total proposed adequate-protection payments of $84,000 during the 13-week Budget. No other payment of prepetition debt is authorized by the requested order.

23. The Debtor requests authority to operate within the Budget with a fifteen percent (15%) variance per operating-expense line item and the aggregate weekly disbursement cap described above. The variance may not be used to increase the $42,000 monthly adequate-

protection payment, pay prepetition debt not specifically authorized, or pay professional compensation without allowance and Court approval.

## ADEQUATE PROTECTION AND ANTICIPATED OBJECTIONS

24. A secured creditor with an interest in cash collateral is entitled to adequate protection to the extent of the anticipated or actual decrease in value of its interest during the case. In re TeVoortwis Dairy, LLC, 605 B.R. 833 (Bankr. E.D. Mich. 2019). Adequate protection is a flexible and fact-specific inquiry directed to preservation of value, and may include periodic cash payments, replacement liens, and other protections. 11 U.S.C. § 361.

24(a). The Debtor's proposed package -- fixed cash payments of $42,000 per month in addition to a replacement lien, a Budget confined to preservation and operating expenses, and a Debtor's Counsel Fees line that is a reserve only, subject to further Court order -- provides adequate protection.

25. Debtor proposes a package of adequate protection. First, the Debtor proposes fixed adequate-protection payments of $42,000 per month, commencing in September 2026 on the dates reflected in the

Budget and continuing through the final hearing or further order. Each payment will be credited against the obligations asserted by Churchill, with allocation and characterization reserved for agreement or later order. The payments do not constitute an admission of claim amount, secured status, or lien rights.

26. Second, the revised Budget directs rents primarily to operating expenditures that preserve the Property and the rent stream itself: payroll and leasing, DTE/water/sewer utilities, insurance, security, management and maintenance, disposal, lawn and pest control, eviction-related services, and reserves for postpetition tax accruals. The proposed order requires the Debtor to keep postpetition real-property taxes and governmental charges current, permits actual insurance premiums necessary to avoid a lapse, requires maintenance of the Property, and bars non-ordinary-course asset dispositions without further order.

27. Third, the Debtor will segregate and account for rent receipts in debtor/debtor-in-possession accounts and provide weekly budget-to-actual reporting, rent-collection information, beginning and ending bank balances, variance explanations, proof of adequate-protection

payments, and supporting bank and expense documentation. These protections directly address the predictable accounting, preservation, and dissipation concerns associated with interim use of rent cash collateral.

28. Fourth, any replacement lien is limited to an actual diminution in value resulting from use, is limited to the same types of collateral and priority as a valid prepetition interest, and does not attach to Chapter 5 claims or their proceeds, prime another lien, cross-collateralize debt, or validate a disputed prepetition lien. The Debtor preserves all rights under 11 U.S.C. §§ 506(c), 542, 544, 545, 547, 548, 549, 550, 551, and 552(b).

29. These protections are designed to preserve rather than consume the economic source of Churchill's asserted collateral. On an aggregate 13-week basis, the revised Budget projects receipts exceeding budgeted outflows by $29,983.92 after two $42,000 adequate-protection payments. The Debtor seeks authority only to use cash actually received and available, subject to the Budget, weekly reporting, and the other protections in the proposed order. Denial of cash-collateral authority would jeopardize utilities, insurance, security, management,

maintenance, tenant retention, and rent collection. The resulting deterioration would harm the Property and future rents and would not improve Churchill's position.

## LEGAL BASIS FOR INTERIM RELIEF

30. Section 363(c)(2) permits a debtor in possession to use cash collateral with the consent of the entity having an interest in the cash collateral or with authorization of the Court. Churchill's anticipated lack of consent therefore does not end the inquiry; the Code expressly permits Court-authorized use. On request of an entity with an interest, § 363(e) directs the Court to prohibit or condition use only to the extent necessary to provide adequate protection of that interest.

31. At a preliminary hearing, § 363(c)(3) permits interim use if there is a reasonable likelihood that the Debtor will prevail at the final hearing on adequate protection. The current MUARA, the fixed $42,000 monthly payments, strict Budget, preservation expenditures, insurance and tax protections, and enhanced reporting satisfy that standard for interim relief without requiring a final adjudication of the parties' state-law rights.

32. TeVoortwis also makes clear that §§ 361 and 363 do not require the Debtor to prove at the cash-collateral stage the ultimate likelihood of a successful reorganization. The immediate issue is adequate protection of Churchill's interest while the Debtor preserves the operating asset pending a final hearing and the broader Chapter 11 process.

33. Fed. R. Bankr. P. 4001(b) permits interim relief to the extent necessary to avoid immediate and irreparable harm pending a final hearing. Without immediate authority to collect and use rents for the Budgeted expenses, the Debtor cannot reliably operate a residential apartment property and protect tenants and collateral. The requested interim relief is limited in duration, amount, use, and variance and is subject to extensive reporting and preservation conditions.

## SERVICE, NOTICE, AND FINAL HEARING

34. The Debtor will serve this Motion, Exhibit A, the proposed interim order, the proposed final order, and the order or notice setting hearing on Churchill's counsel; the Office of the United States Trustee; all secured creditors; the creditors on the Debtor's Rule 1007(d) list; any

official committee if appointed; the Debtor's creditor matrix; and all other entities required by Fed. R. Bankr. P. 4001, 7004, and 9014 and applicable Local Rules.

35. The Debtor requests an expedited interim hearing and a final hearing as contemplated by LBR 4001-2. The proposed interim order provides a fourteen-day objection period, preserves Churchill's and all other parties' rights to object to final relief, and permits interim use only through the final hearing or further order.

WHEREFORE, the Debtor respectfully requests that the Court enter an interim order authorizing the Debtor to collect and use alleged cash collateral in accordance with the Budget and the adequate protection described above, preserve the status quo with respect to rent collection pending the final hearing, schedule a final hearing, and grant such other and further relief as is just and equitable.

Respectfully submitted,
/s/ Robert N. Bassel
ROBERT N. BASSEL (P48420),
Attorney for Debtor
P.O. Box T, Clinton, MI 49236
(248) 677-1234 | bbassel@gmail.com
Dated: August 17, 2026

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:
**1800 BETHUNE LOFTS LLC,**

Debtor.
_______________________________________/

Case No. 26-48983-mlo
Chapter 11
Hon. Maria L. Oxholm

**VERIFIED DECLARATION OF MICHAEL RIVAIT IN SUPPORT OF DEBTOR'S FIRST DAY MOTION FOR USE OF CASH COLLATERAL, REGARDING ADEQUATE PROTECTION AND RELATED RELIEF**

MICHAEL RIVAIT states under penalty of perjury:

1. I am the principal of Debtor 1800 Bethune Lofts LLC. I am familiar with the Debtor's property, operations, finances, and the circumstances leading to the Chapter 11 filing.

2. To the best of my knowledge, information, and belief, the factual averments in the Debtor's Motion for Use of Cash Collateral are true and correct.

3. The Debtor owns and operates the multifamily residential property at 1800 West Bethune Street, Detroit, Michigan. The property was formerly abandoned and deteriorated and has been substantially rehabilitated. It is now an operating residential community with renovated apartments, management, maintenance, and security services.

4. The physical rehabilitation is substantially complete, and the Debtor believes continued operation through Chapter 11 provides the best opportunity to stabilize revenue and preserve value.

5. I have reviewed the revised 13-week Budget attached as Exhibit A. I believe its revenue projections and expense categories reflect the Debtor's current estimates and that the budgeted expenditures are directed to continuing operations, protecting residents, preserving rents, and avoiding deterioration of the Property.

6. The revised Budget projects $224,952.00 in revenue and $194,968.08 in total cash outflows over 13 weeks, with aggregate net cash flow of $29,983.92, and projected ending cash of $38,983.92. It includes $42,000 lender payments in Weeks 5 and 10, for a total of $84,000.00 during the Budget period. I understand those lender payments are proposed as adequate protection and are not to be increased through the general variance provision. The Debtor will not make disbursements beyond cash actually available and will report material timing changes through the weekly reporting required by the proposed order.

7. The revised Budget also includes a Debtor's counsel fee reserve of $500 per week. I understand that professional compensation remains subject to the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Court approval. I understand that the property-tax reserve is intended for postpetition accruals and to keep the taxes current as they become due. I also understand that the U.S. Trustee fee shown in Week 12 is an estimate and the actual amount due will be determined under 28 U.S.C. § 1930(a)(6).

8. A May 2026 Newmark appraisal states an as-is leased-fee value of $8,900,000. Debtor reserves all rights regarding the value of the Property and the amount, validity, enforceability, priority, and secured status of Churchill's claim.

9. Without authority to use alleged cash collateral, the Debtor would be unable to reliably pay postpetition expenses such as payroll and leasing, utilities, insurance, security, property management and maintenance, disposal, lawn and pest control, eviction-related legal services, and other costs needed to preserve and operate the Property. Interruption of those services would risk lost tenants and rents, physical deterioration, and a reduction in value available to creditors.

10. I believe that the fixed $42,000 monthly adequate-protection payments, continued insurance and maintenance, strict Budget controls, segregation and accounting for rent receipts, and weekly reporting and supporting documentation will allow the Debtor to preserve the Property while providing substantial interim protection to Churchill pending a final hearing.

11. Churchill filed a motion in state court asking that a receiver be appointed. The Chapter 11 case was filed before the scheduled hearing on that motion. No receiver was appointed before the bankruptcy filing, and no receiver has been appointed. The Debtor is prepared to continue collecting rents through its accounts, account for those receipts and disbursements, and provide the weekly financial information and supporting records required by the proposed interim order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 17, 2026.

/s/ Michael Rivait
MICHAEL RIVAIT,
Principal of 1800 Bethune Lofts LLC

Prepared by:

Respectfully submitted,
/s/ Robert N. Bassel
ROBERT N. BASSEL (P48420),
Attorney for Debtor
P.O. Box T, Clinton, MI 49236
(248) 677-1234 | bbassel@gmail.com

Dated: August 17, 2026

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:
**1800 BETHUNE LOFTS LLC,**

Debtor.
_________________________________________/

Case No. 26-48983-mlo
Chapter 11
Hon. Maria L. Oxholm

# INTERIM ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL IN A SPECIFIED AMOUNT, PROVIDING ADEQUATE PROTECTION, AND SCHEDULING A FINAL HEARING

This matter came before the Court on the Debtor's First Day Motion for Use of Cash Collateral, Regarding Adequate Protection and Related Relief ("Motion"; ECF No. ___). A hearing on the Motion was held on __________________, 2026 (the "Interim Hearing"). Appearances were placed on the record. The Court has reviewed the Motion, the Verified Declaration of Michael Rivait ("Declaration"), the 13-week cash collateral budget attached as Exhibit A (the "Budget"), and the other pertinent pleadings, and has considered the statements made at the Interim Hearing. The record reflects that the Chapter 11 case was filed before the scheduled state-court receiver hearing and that no receiver was appointed before the Petition Date. The Court need not finally adjudicate at this preliminary hearing the amount, validity, priority, extent, perfection, enforceability, or ownership consequences of any

assignment of rents or any alleged prepetition enforcement. For purposes of interim relief, the Court finds that the Debtor has shown a reasonable likelihood of prevailing at the final hearing on the issue of adequate protection, that continued collection and use of rents under the conditions below is necessary to avoid immediate and irreparable harm, and that the interim protections provided below are adequate pending the Final Hearing.

**NOW, THEREFORE, IT IS ORDERED:**

1. **Motion Granted.** The Motion is granted on an interim basis on the terms of this Order.

2. **Capitalized Terms.** Capitalized terms not defined in this Order have the meanings given in the Motion.

3. **Authorization.** The Debtor is authorized on an interim basis to collect rents from tenants in the ordinary course, deposit rent receipts into debtor/debtor-in-possession accounts, use cash collateral, and provide adequate protection strictly in accordance with this Order.

3(a). **Status Quo for Rent Collection.** Pending the Final Hearing or further order, the Debtor shall continue ordinary-course tenant billing and rent collection. The Petition-Date status quo included

the Debtor remaining in possession and no state-court receiver having been appointed. No party shall direct tenants, property managers, payment processors, or depository institutions to redirect rents or rent proceeds away from the Debtor or otherwise alter the ordinary-course rent-collection arrangements without written agreement of the Debtor and Churchill or further order of this Court. This paragraph is interim status-quo relief only and does not determine whether Churchill completed any demand-notice enforcement under Mich. Comp. Laws § 554.1058 or the parties' ultimate rights under Michigan law.

4. Use of Cash Collateral. The Debtor is authorized to use cash collateral in accordance with the line items in the Budget for postpetition operations, in aggregate cash disbursements of no more than $58,341 in any budget week, from the Petition Date through and including the conclusion of the Final Hearing identified below, with a fifteen percent (15%) variance per operating-expense line item. The $58,341 aggregate cap is a separate overall ceiling and does not enlarge the permitted fifteen percent (15%) variance for any individual operating-expense line item. The variance and aggregate cap may not increase the $42,000 lender-payment line. The Debtor may carry

forward an unused budgeted operating amount from a prior week, subject to the terms of this Order. Authority under this paragraph is limited to cash actually available in the Debtor's debtor-in-possession accounts and does not authorize an overdraft or deficit spending. If authority is entered after the commencement of a budget week, the Debtor may use the Budget amounts attributable to postpetition operations from the Petition Date through the week in which authority is granted.

4(a). **No Prepetition Debt Payments.** Except for the $42,000 adequate-protection payments expressly authorized by paragraph 5(a), this Order does not authorize payment of any prepetition debt, absent further order.

4(b). **Professional Fee Reserve.** The Debtor's Counsel Fees line in the Budget is a reserve only. No payment may be made to Debtor’s counsel or any other retained professional from that reserve except after allowance under 11 U.S.C. §§ 330 and/or 331, the Federal Rules of Bankruptcy Procedure, the Local Rules, or further order. This Order does not approve professional compensation.

4(c). **Property-Tax Reserve.** The Property Tax Reserve line is authorized solely as a reserve for postpetition tax accruals and preservation purposes so that taxes remain current as they become due.

4(d). **Insider and Management Payments.** To the extent an operating-expense line is payable to an insider or insider-affiliated entity, authority is limited to postpetition services rendered in the ordinary course and at or below the budgeted amount. No payment of a prepetition insider claim is authorized.

4(e). **Insurance Premiums.** In addition to the Budgeted amount, the Debtor is authorized and directed to pay an actual insurance premium that becomes due during the Interim Period to the extent reasonably necessary to prevent lapse, cancellation, or material reduction of insurance covering the Debtor, the estate, the Property, or Churchill's asserted collateral.

4(f). **No Non-Ordinary-Course Dispositions.** The Debtor shall not sell, transfer, encumber, or otherwise dispose of the Property or other material assets outside the ordinary course of business absent further order of this Court after notice and a hearing or written consent of all affected lienholders.

5. **Adequate Protection — Replacement Liens.** As one component, and not the sole component, of interim adequate protection, to the extent the Debtor uses cash collateral and only to the extent of any actual diminution in value caused by such use, any claimant holding a valid, perfected, enforceable, and unavoidable prepetition lien or security interest in cash collateral is granted a replacement lien in the same types and descriptions of collateral that were subject to that claimant's prepetition lien, with the same priority and subject to the same defenses and limitations that existed on the Petition Date. No replacement lien is granted merely because a creditor asserts an interest; validity, priority, extent, perfection, enforceability, and avoidability remain reserved. Any replacement lien shall not attach to Chapter 5 claims or proceeds, shall not prime another lien, and shall not enlarge or cross-collateralize a prepetition interest.

5(a). **Adequate Protection Payments.** As additional interim adequate protection, the Debtor is authorized and directed to pay Churchill MRA Funding I LLC $42,000 per month, commencing in September 2026 on the dates reflected in the Budget and continuing through the conclusion of the Final Hearing or further order. The

$42,000 amount is fixed and is not subject to an upward Budget variance. Each payment shall be credited against Churchill's asserted obligations, with final application and characterization reserved for agreement or later order. The payments do not constitute an admission as to the amount, validity, priority, perfection, enforceability, or secured status of Churchill's claim or any asserted ownership of rents.

5(b). **Other Adequate Protection.** The adequate protection provided by this Order also includes the preservation and maintenance covenants in paragraph 7, the Debtor's agreement in paragraph 7(a) to keep postpetition taxes and governmental charges current, the Budget restrictions, the rent segregation and accounting requirements, and the reporting and document-production requirements in paragraph 6.

6. **Reporting and Documentation.** Within five business days after the end of each Budget week, the Debtor shall provide to Churchill and the Office of the United States Trustee: (a) actual receipts and disbursements by Budget line item; (b) beginning and ending cash balances; (c) Budget variances; (d) a written explanation of any line-item variance exceeding fifteen percent (15%); (e) the amount and date of each adequate-protection payment; (f) a summary of rent billed and

rent collected during the reporting week; (g) bank-account transaction detail or equivalent account activity for the reporting period; and (h) copies of invoices, contracts, receipts, canceled-check images, or other reasonable payment records for any single disbursement of $1,000 or more.

7. **Insurance and Preservation.** The Debtor shall maintain insurance required for operation of the Property and protecting the estate and Churchill's asserted collateral, maintain and secure the Property, continue ordinary-course services reasonably necessary to preserve rents and value, maintain books and records, and use the Budgeted operating expenses in good faith for preservation and operation of the residential property.

7(a). **Postpetition Taxes and Charges.** The Debtor shall pay postpetition real-property taxes, assessments, and governmental charges when due to the extent provided in the Budget or otherwise authorized by this Court, and shall not knowingly permit a new postpetition tax or governmental lien to arise through nonpayment. Within seven days after entry of this Order, the Debtor shall provide Churchill and the United States Trustee copies of the most recent

available real-property tax statements, receipts, or other records reasonably showing current status. Nothing in this paragraph authorizes payment of any otherwise unauthorized prepetition debt.

8. **Service.** Within twenty-four (24) hours after entry of this Order, Debtor counsel shall serve this Order on Churchill; all secured creditors; the creditors included on the Debtor's Rule 1007(d) list; the Debtor's creditor matrix; any official committee; the Office of the United States Trustee; and all other parties required by Fed. R. Bankr. P. 4001 and LBR 4001-2.

9. **Objections.** Any party objecting to final relief or to this Interim Order becoming final shall file and serve a written objection within fourteen (14) days after entry of this Order, except that an official committee may object within fourteen (14) days after it is served with this Order. A timely objection will be heard at the Final Hearing unless otherwise ordered. If no timely objection is filed, the Court may make this Interim Order final without further hearing.

10. **Final Hearing.** The Final Hearing on the Motion and any timely objections will be held before the Honorable Maria L. Oxholm, Courtroom 1875, United States Bankruptcy Court, 211 W. Fort Street,

Detroit, Michigan 48226, on ____________________, 2026 at ______ __.m. The Debtor may continue to use cash collateral under this Order through the conclusion of the Final Hearing or further order, provided it remains in compliance with this Order.

11. **No Other Relief Granted; Reservation of Rights.** Except as expressly stated, nothing in this Order: (a) determines the amount, validity, extent, priority, perfection, enforceability, or avoidability of any claim, mortgage, lien, security interest, or assignment of rents; (b) releases any claim, defense, setoff, recoupment, turnover defense, or cause of action of the Debtor, the estate, or any party in interest; (c) grants a lien on any claim or cause of action arising under Chapter 5 of the Bankruptcy Code or its proceeds; (d) waives any right under 11 U.S.C. § 506(c); (e) grants a priming lien, enlarges a prepetition lien, or grants cross-collateralization; (f) authorizes payment of prepetition debt except the adequate-protection payments expressly authorized by paragraph 5(a); (g) requires or prohibits any particular plan term; (h) finally determines whether Churchill completed demand-notice enforcement under Mich. Comp. Laws § 554.1058, or the effect of MUARA on the parties' ultimate rights; or (i) waives or adjudicates any

right under 11 U.S.C. §§ 542, 544, 545, 547, 548, 549, 550, 551, or 552(b). All such rights are expressly reserved for the Final Hearing or other appropriate proceeding. The status-quo restriction in paragraph 3(a) expires at the conclusion of the Final Hearing unless continued by further order.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:
**1800 BETHUNE LOFTS LLC,**

Debtor.
_______________________________________/

Case No. 26-48983-mlo
Chapter 11
Hon. Maria L. Oxholm

## CERTIFICATE OF SERVICE

The undersigned certifies that on 8.17.2026, copies of the Debtor's First Day Motion for Use of Cash Collateral, Regarding Adequate Protection and Related Relief, Exhibit A, the proposed/entered interim order, the proposed final order, and the Verified Declaration of Michael Rivait were served by ECF, electronic mail, overnight mail, first-class U.S. Mail, or other method reasonably calculated to provide prompt notice, as applicable, upon:

All counsel of record via the ECF system
Debtor's matrix.

Respectfully submitted,
/s/ Robert N. Bassel
ROBERT N. BASSEL (P48420),
Attorney for Debtor
P.O. Box T, Clinton, MI 49236
(248) 677-1234 | bbassel@gmail.com
Dated: August 17, 2026

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:
**1800 BETHUNE LOFTS LLC,**
Debtor.

Case No. 26-48983-mlo
Chapter 11
Hon. Maria L. Oxholm

______________________________________________/

## ORDER SETTING HEARING ON DEBTOR'S FIRST DAY MOTION FOR USE OF CASH COLLATERAL

Upon the filing of the Debtor's First Day Motion for Use of Cash Collateral, Regarding Adequate Protection and Related Relief,

**IT IS HEREBY ORDERED that a hearing on the Motion shall be held on ____________________, 2026 at ______ __.m., before the Honorable Maria L. Oxholm, Courtroom 1875, United States Bankruptcy Court, 211 W. Fort Street, Detroit, Michigan 48226.**

IT IS FURTHER ORDERED that within twenty-four (24) hours after entry, the Debtor shall serve this Order, the Motion and its attachments, and the proposed interim order on Churchill MRA Funding I LLC, the Office of the United States Trustee, all secured creditors, the creditors on the Debtor's Rule 1007(d) list and creditor matrix, any official committee, and all other parties required by Fed. R. Bankr. P. 4001 and LBR 4001-2, by ECF where applicable and otherwise by a method reasonably calculated to provide prompt notice.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:
**1800 BETHUNE LOFTS LLC,**
Debtor.
_______________________________________/

Case No. 26-48983-mlo
Chapter 11
Hon. Maria L. Oxholm

# FINAL ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION, AND GRANTING RELATED RELIEF

This matter came before the Court for final consideration of the Debtor's First Day Motion for Use of Cash Collateral, Regarding Adequate Protection and Related Relief (the "Motion"; ECF No. ___). The Court previously entered interim relief, notice of the Motion and the interim relief was provided as required, and any objections to final relief have been resolved, withdrawn, or overruled. The Court finds that the relief granted below is necessary to preserve the Debtor's operating residential property and that the protections provided are adequate for purposes of 11 U.S.C. §§ 361 and 363.

NOW, THEREFORE, IT IS ORDERED:

1. Motion Granted on a Final Basis. The Motion is granted on a final basis for the Budget Period and on the terms of this Order.

2. Capitalized Terms. Capitalized terms not defined in this Order have the meanings given in the Motion.

3. Authorization and Budget Period. The Debtor is authorized to collect and use cash collateral from August 13, 2026 through November 11, 2026 (the "Budget Period") in accordance with the 13-week cash collateral budget attached to the Motion as Exhibit A (the "Budget"), subject to the terms of this Order. The Debtor may use a fifteen percent (15%) variance per operating-expense line item and may make aggregate cash disbursements of no more than $58,341 in any Budget week. The $58,341 aggregate cap is a separate overall ceiling and does not enlarge the permitted fifteen percent (15%) variance for any individual operating-expense line item. Neither the line-item variance nor the aggregate cap may increase the $42,000 lender-payment line. Unused Budget amounts may be carried forward, provided that the aggregate weekly cap is not exceeded without Churchill's written consent or further order. Authority under this paragraph is limited to cash actually available in the Debtor's debtor-in-possession accounts and does not authorize an overdraft, deficit spending, or borrowing.

3(a). Ordinary-Course Rent Collection. During the Budget Period, the Debtor may continue ordinary-course tenant billing, rent collection, deposit, and application of rents in its debtor-in-possession accounts. Nothing in this Order authorizes any party to redirect rents from the Debtor during the Budget Period except by written agreement or further order of this Court.

4. No Unauthorized Prepetition Debt Payments. Except for the adequate-protection payments expressly authorized below, this Order does not authorize payment of prepetition debt absent further order.

4(a). Professional Fee Reserve. The Debtor's Counsel Fees line in the Budget is a reserve only. No payment may be made to Debtor's counsel or any other retained professional except after allowance under 11 U.S.C. §§ 330 and/or 331, the Bankruptcy Rules, the Local Rules, or further order.

4(b). Property-Tax Reserve. The Property Tax Reserve is authorized solely for postpetition accruals and preservation purposes so that taxes remain current as they become due. This Order does not authorize payment of an otherwise unauthorized prepetition tax claim.

4(c). Insider and Management Payments. To the extent an operating-expense line is payable to an insider or insider-affiliated entity, authority is limited to postpetition services actually rendered in the ordinary course and at or below the Budgeted amount.

4(d). Insurance Premiums. In addition to the Budgeted amount, the Debtor is authorized and directed to pay an actual insurance premium that becomes due during the Budget Period to the extent reasonably necessary to prevent lapse, cancellation, or material reduction of insurance covering the Debtor, the estate, the Property, or Churchill's asserted collateral.

4(e). No Non-Ordinary-Course Dispositions. The Debtor shall not sell, transfer, encumber, or otherwise dispose of the Property or other material assets outside the ordinary course without further order.

5. Replacement Liens. As one component, and not the sole component, of adequate protection, to the extent the Debtor uses cash collateral and only to the extent of any actual diminution in value caused by such use, any claimant holding a valid, perfected, enforceable, and unavoidable prepetition lien or security interest in cash collateral is granted a replacement lien in the same types and

descriptions of collateral that were subject to that claimant's prepetition lien, with the same priority and subject to the same defenses and limitations that existed on the Petition Date. No replacement lien attaches to Chapter 5 claims or proceeds, primes another lien, enlarges a prepetition lien, or cross-collateralizes debt.

5(a). Adequate-Protection Payments. The Debtor is authorized and directed to pay Churchill MRA Funding I LLC $42,000 on each of the two dates reflected in the Budget, for total adequate-protection payments of $84,000 during the Budget Period. The $42,000 amount is fixed and is not subject to an upward Budget variance. Each payment shall be credited against Churchill's asserted obligations, with final application and characterization reserved for agreement or later order.

5(b). Additional Adequate Protection. Adequate protection also includes the Budget restrictions, preservation and maintenance covenants, postpetition-tax agreement, insurance protections, segregation and accounting of rents, weekly reporting, and document-production requirements stated in this Order.

6. Reporting and Documentation. Within five business days after the end of each Budget week, the Debtor shall provide Churchill and

the Office of the United States Trustee: (a) actual receipts and disbursements by Budget line item; (b) beginning and ending cash balances; (c) Budget variances; (d) a written explanation of any line-item variance exceeding fifteen percent (15%); (e) the amount and date of each adequate-protection payment; (f) a summary of rent billed and collected; (g) bank-account transaction detail or equivalent account activity; and (h) copies of invoices, contracts, receipts, canceled-check images, or other reasonable payment records for any single disbursement of $1,000 or more.

7. Insurance and Preservation. The Debtor shall maintain insurance required for operation of the Property and protecting the estate and Churchill's asserted collateral; maintain and secure the Property; continue ordinary-course services reasonably necessary to preserve rents and value; maintain books and records; and use Budgeted operating expenses in good faith for preservation and operation of the residential property.

7(a). Postpetition Taxes and Charges. The Debtor shall pay postpetition real-property taxes, assessments, and governmental charges when due to the extent provided in the Budget or otherwise

authorized by the Court and shall not knowingly permit a new postpetition tax or governmental lien to arise through nonpayment.

8. Objections Resolved. Any objection to final use of cash collateral under this Order is resolved, withdrawn, or overruled. No unresolved objection prevents the relief granted herein.

9. Duration and Further Use. Authority under this Order continues through November 11, 2026 unless earlier terminated by dismissal or conversion of this case or further order. If the Debtor seeks to use cash collateral after November 11, 2026, it shall obtain written consent or further Court authorization based on an updated budget.

10. Reservation of Underlying Rights. Except for the Debtor's authority to use cash collateral during the Budget Period on the terms of this Order, nothing in this Order determines the amount, validity, extent, priority, perfection, enforceability, or avoidability of any claim, mortgage, lien, security interest, or assignment of rents; releases any claim, defense, setoff, recoupment, turnover defense, or cause of action; grants a lien on Chapter 5 claims or proceeds; waives rights under 11 U.S.C. § 506(c); grants a priming lien or cross-collateralization; or finally adjudicates whether Churchill completed demand-notice

enforcement under Mich. Comp. Laws § 554.1058 or the ultimate effect of MUARA on title to rents. The Court need not decide those underlying issues to authorize the consensual or otherwise resolved final use approved by this Order.

11. Immediate Effect. This Order is effective immediately upon entry. Any otherwise applicable stay under Fed. R. Bankr. P. 4001(a)(3) or 6004(h), to the extent applicable, is waived for purposes of the relief granted herein.

12. Service. Within twenty-four (24) hours after entry, Debtor's counsel shall serve this Order on Churchill, the Office of the United States Trustee, all secured creditors, the creditors on the Debtor's Rule 1007(d) list, any official committee, and all other parties required by Fed. R. Bankr. P. 4001 and LBR 4001-2.

# EXHIBIT A

## 13-Week Chapter 11 Cash Collateral Budget - 1800 Bethune Lofts LLC

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 |
|---|---|---|---|---|---|---|---|
| | **Aug 13 - Aug 19** | **Aug 20 - Aug 26** | **Aug 27 - Sept 2** | **Sept 3- Sept 9** | **Sept 10 - Sept 16** | **Sept 17 - Sept 23** | **Sept 24 - Sept 30** |
| **REVENUE** | | | | | | | |
| Projected Revenue | $8,490.00 | $7,305.00 | $4,305.00 | $18,305.00 | $46,070.00 | $7,305.00 | $4,305.00 |
| **Total Revenue** | **$8,490.00** | **$7,305.00** | **$4,305.00** | **$18,305.00** | **$46,070.00** | **$7,305.00** | **$4,305.00** |
| **CASH OUTFLOWS** | | | | | | | |
| Payroll / Leasing Sales - Jakob | $2,250.00 | $2,250.00 | $2,250.00 | $2,250.00 | $2,250.00 | $2,250.00 | $2,250.00 |
| Utilities - DTE / Water / Sewer | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 |
| Insurance | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 |
| Security | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Attorney Fees - Evictions | $100.00 | - | $100.00 | $100.00 | - | - | $100.00 |
| Property Management / Maintenance | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 |
| Detroit Disposal | $172.50 | - | $173.00 | - | $175.00 | - | $172.00 |
| Property Tax Reserve | $576.00 | $576.00 | $576.00 | $576.00 | $576.00 | $576.00 | $576.00 |
| Lawn Cutting / Pest Control | $530.00 | $250.00 | $530.00 | $250.00 | $530.00 | $250.00 | $530.00 |
| Lender Payment | - | - | - | - | $42,000.00 | - | - |
| U.S. Trustee Quarterly Fee (Est.) | - | - | - | - | - | - | - |
| Debtor's Counsel Fee Reserve | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| **Cash Outflow Subtotal** | **$8,828.50** | **$8,276.00** | **$8,829.00** | **$8,376.00** | **$50,731.00** | **$8,276.00** | **$8,828.00** |
| Other Debt Service | - | - | - | - | - | - | - |
| **Total Cash Outflows** | **$8,828.50** | **$8,276.00** | **$8,829.00** | **$8,376.00** | **$50,731.00** | **$8,276.00** | **$8,828.00** |
| **Net Weekly Cash Flow** | **($338.50)** | **($971.00)** | **($4,524.00)** | **$9,929.00** | **($4,661.00)** | **($971.00)** | **($4,523.00)** |
| **Beginning Cash** | **$9,000.00** | **$8,661.50** | **$7,690.50** | **$3,166.50** | **$13,095.50** | **$8,434.50** | **$7,463.50** |
| **Ending Cash** | **$8,661.50** | **$7,690.50** | **$3,166.50** | **$13,095.50** | **$8,434.50** | **$7,463.50** | **$2,940.50** |

# EXHIBIT A - CONTINUED

## 13-Week Chapter 11 Cash Collateral Budget - 1800 Bethune Lofts LLC

| | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Total / Ending |
|---|---|---|---|---|---|---|---|
| | Oct 1 - Oct 7 | Oct 8 - Oct 14 | Oct 15- Oct 21 | Oct 22- Oct 28 | Oct 29 - Nov 4 | Nov 5 - Nov 11 | 13 Weeks |
| **REVENUE** | | | | | | | |
| Projected Revenue | $15,304.00 | $46,070.00 | $13,490.00 | $4,390.00 | $2,309.00 | $47,304.00 | $224,952.00 |
| **Total Revenue** | **$15,304.00** | **$46,070.00** | **$13,490.00** | **$4,390.00** | **$2,309.00** | **$47,304.00** | **$224,952.00** |
| **CASH OUTFLOWS** | | | | | | | |
| Payroll / Leasing Sales - Jakob | $2,250.00 | $2,250.00 | $2,250.00 | $2,250.00 | $2,250.00 | $2,250.00 | $29,250.00 |
| Utilities - DTE / Water / Sewer | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $19,500.00 |
| Insurance | $1,400.00 | $1,400.00 | $1,400.00 | $500.00 | $1,400.00 | $1,400.00 | $17,300.00 |
| Security | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $6,500.00 |
| Attorney Fees - Evictions | $100.00 | - | - | $100.00 | $100.00 | - | $700.00 |
| Property Management / Maintenance | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 | $16,900.00 |
| Detroit Disposal | - | $169.00 | - | $175.00 | - | $175.00 | $1,211.50 |
| Property Tax Reserve | $576.00 | $576.00 | $576.00 | $576.00 | $576.00 | $576.00 | $7,488.00 |
| Lawn Cutting / Pest Control | $250.00 | $530.00 | $250.00 | $530.00 | $250.00 | $530.00 | $5,210.00 |
| Lender Payment | - | - | $42,000.00 | - | - | - | $84,000.00 |
| U.S. Trustee Quarterly Fee (Est.) | - | - | - | - | $408.58 | - | $408.58 |
| Debtor's Counsel Fee Reserve | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $6,500.00 |
| **Cash Outflow Subtotal** | **$8,376.00** | **$8,725.00** | **$50,276.00** | **$7,931.00** | **$8,784.58** | **$8,731.00** | **$194,968.08** |
| Other Debt Service | - | - | - | - | - | - | - |
| **Total Cash Outflows** | **$8,376.00** | **$8,725.00** | **$50,276.00** | **$7,931.00** | **$8,784.58** | **$8,731.00** | **$194,968.08** |
| **Net Weekly Cash Flow** | **$6,928.00** | **$37,345.00** | **($36,786.00)** | **($3,541.00)** | **($6,475.58)** | **$38,573.00** | **$29,983.92** |
| **Beginning Cash** | **$2,940.50** | **$9,868.50** | **$47,213.50** | **$10,427.50** | **$6,886.50** | **$410.92** | **$9,000.00** |
| **Ending Cash** | **$9,868.50** | **$47,213.50** | **$10,427.50** | **$6,886.50** | **$410.92** | **$38,983.92** | **$38,983.92** |