**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 26-48983-mlo |
| **1800 BETHUNE LOFTS LLC,** | Chapter 11 |
| Debtor. | Hon. Maria L. Oxholm |

_____________________________________________/

**INTERIM ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL IN A SPECIFIED AMOUNT, PROVIDING ADEQUATE PROTECTION, AND SCHEDULING A FINAL HEARING**

This matter came before the Court on the Debtor's *First Day Motion for Use of Cash Collateral, Regarding Adequate Protection and Related Relief* [Doc 10] (the "Motion"). An interim hearing on the Motion was held on August 24, 2026 (the "Interim Hearing"). Appearances were noted on the record. The Court has reviewed the Motion, the Verified Declaration of Michael Rivait (the "Declaration"), the 13-week cash collateral budget attached as Exhibit A (the "Budget"), and the other pertinent pleadings, and has considered the statements made at the Interim Hearing. The record reflects that the Chapter 11 case was filed before the scheduled state-court receiver hearing and that no receiver was appointed before the Petition Date. The Court need not finally adjudicate at this preliminary

stage the amount, validity, priority, extent, perfection, enforceability, or ownership consequences of any assignment of rents or any alleged prepetition enforcement. For purposes of interim relief, the Court finds that the Debtor has demonstrated a reasonable likelihood of prevailing at the final hearing on the issue of adequate protection, that continued collection and use of rents under the conditions set forth below is necessary to avoid immediate and irreparable harm, and that the interim protections provided herein are adequate pending the Final Hearing.

**NOW, THEREFORE, IT IS ORDERED:**

**1. Motion Granted.** The Motion is granted on an interim basis on the terms of this Order.

**2. Capitalized Terms.** Capitalized terms not defined in this Order have the meanings given in the Motion.

**3. Authorization.** The Debtor is authorized on an interim basis to collect rents from tenants in the ordinary course, deposit rent receipts into debtor/debtor-in-possession accounts, use cash collateral, and provide adequate protection, in each case strictly in accordance with this Order.

**3(a). Status Quo for Rent Collection.** Pending the Final Hearing or further order, the Debtor shall continue ordinary-course tenant billing and rent collection. The Petition-Date status quo included the Debtor

remaining in possession and no state-court receiver having been appointed. No party shall direct tenants, property managers, payment processors, or depository institutions to redirect rents or rent proceeds away from the Debtor or otherwise alter the ordinary-course rent-collection arrangements without written agreement of the Debtor and Churchill or further order of this Court. This paragraph is interim status-quo relief only and does not determine whether Churchill completed any demand-notice enforcement under Mich. Comp. Laws § 554.1058 or the parties' ultimate rights under Michigan law.

**4. Use of Cash Collateral.** The Debtor is authorized to use cash collateral in accordance with the line items in the Budget attached as **Exhibit A** to the Motion for postpetition operations during the period from the Petition Date through and including September 17, 2026 (the "Interim Period"), in an aggregate amount equal to no more than $43,040.50, including the Reserves (which includes the Professional Fee Reserve plus the Property-Tax Reserve, each as defined below), subject to a ten percent (10%) variance per operating-expense line item. Additionally, the Debtor is authorized to pay adequate protection to Churchill in the total amount of $42,000.00 during the Interim Period. If authority to use cash collateral is entered after the commencement of a budget week, the Debtor may use the

Budget amounts attributable to postpetition operations from the Petition Date through the week in which authority is granted.

**4(a). No Prepetition Debt Payments.** Except for the $42,000 adequate-protection payments expressly authorized by paragraph 5(a), this Order does not authorize payment of any prepetition debt, absent further order.

**4(b). Professional Fee Reserve.** The Professional Fee Reserve line in the Budget for the Debtor's professional fees is a reserve only. No payment may be made to Debtor's counsel or any other retained professional from that reserve except after allowance under 11 U.S.C. §§ 330 and/or 331, the Federal Rules of Bankruptcy Procedure, the Local Rules, or further order. This Order does not approve professional compensation. The Debtor may segregate funds for this purpose in a debtor-in-possession account, and any such segregated funds remain property of the estate.

**4(c). Property-Tax Reserve.** The Property-Tax Reserve line is authorized solely as a reserve for postpetition tax accruals and preservation purposes so that taxes remain current as they become due.

**4(d). Insider and Management Payments.** To the extent an operating-expense line is payable to an insider or insider-affiliated entity,

authority is limited to postpetition services rendered in the ordinary course and at or below the budgeted amount. No payment of a prepetition insider claim is authorized.

**4(e). Insurance Premiums.** In addition to the budgeted amount, the Debtor is authorized and directed to pay any actual insurance premium that becomes due during the Interim Period to the extent reasonably necessary to prevent the lapse, cancellation, or material reduction of insurance covering the Debtor, the estate, the Property, or Churchill's asserted collateral.

**4(f). No Non-Ordinary-Course Dispositions.** The Debtor shall not sell, transfer, encumber, or otherwise dispose of the Property or other material assets outside the ordinary course of business absent further order of this Court after notice and a hearing or written consent of all affected lienholders.

**5. Adequate Protection — Replacement Liens.** As one component, and not the sole component, of interim adequate protection, and only to the extent of any actual diminution in value caused by the Debtor's use of cash collateral, any claimant holding a valid, perfected, enforceable, and unavoidable prepetition lien or security interest in cash collateral is granted a replacement lien in the same types and descriptions of collateral

that were subject to that claimant's prepetition lien, with the same priority and subject to the same defenses and limitations that existed on the Petition Date. No replacement lien is granted merely because a creditor asserts an interest; validity, priority, extent, perfection, enforceability, and avoidability remain reserved. Any replacement lien shall not attach to Chapter 5 claims or their proceeds, shall not prime another lien, and shall not enlarge or cross-collateralize a prepetition interest.

**5(a). Adequate Protection Payments.** As additional interim adequate protection, the Debtor is authorized and directed to pay Churchill MRA Funding I LLC $42,000 per month, commencing in September 2026 on the dates reflected in the Budget, and continuing through the conclusion of the Final Hearing or further order. The $42,000 amount is fixed and is not subject to an upward Budget variance. Each payment shall be credited against Churchill's asserted obligations, with final application and characterization reserved for agreement or later order. These payments do not constitute an admission as to the amount, validity, priority, perfection, enforceability, or secured status of Churchill's claim or any asserted ownership of rents.

**5(b). Other Adequate Protection.** The adequate protection provided by this Order also includes the preservation and maintenance

covenants in paragraph 7, the Debtor's agreement in paragraph 7(a) to keep postpetition taxes and governmental charges current, the Budget restrictions, the rent segregation and accounting requirements, and the reporting and document-production requirements in paragraph 6.

**6. Reporting and Documentation.** Within five business days after the end of each Budget week, the Debtor shall provide to Churchill and the Office of the United States Trustee: (a) actual receipts and disbursements by Budget line item; (b) beginning and ending cash balances; (c) Budget variances; (d) a written explanation of any line-item variance exceeding ten percent (10%); (e) the amount and date of each adequate-protection payment; (f) a summary of rent billed and rent collected during the reporting week; (g) bank-account transaction detail or equivalent account activity for the reporting period; and (h) copies of invoices, contracts, receipts, canceled-check images, or other reasonable payment records for any single disbursement of $1,000 or more.

**7. Insurance and Preservation.** The Debtor shall maintain insurance required for operation of the Property and protection of the estate and Churchill's asserted collateral, maintain and secure the Property, continue ordinary-course services reasonably necessary to preserve rents and value, maintain books and records, and use budgeted operating

expenses in good faith for the preservation and operation of the residential property.

**7(a). Postpetition Taxes and Charges.** The Debtor shall pay postpetition real-property taxes, assessments, and governmental charges when due to the extent provided in the Budget or otherwise authorized by this Court, and shall not knowingly permit a new postpetition tax or governmental lien to arise through nonpayment. Within seven days after entry of this Order, the Debtor shall provide Churchill and the United States Trustee copies of the most recent available real-property tax statements, receipts, or other records reasonably showing current status. Nothing in this paragraph authorizes payment of any otherwise unauthorized prepetition debt.

**8. Service.** Within twenty-four (24) hours after entry of this Order, Debtor's counsel shall serve this Order on Churchill; all secured creditors; the creditors included on the Debtor's Rule 1007(d) list; all creditors on the Debtor's creditor matrix; any official committee; the Office of the United States Trustee; and all other parties required by Fed. R. Bankr. P. 4001 and LBR 4001-2.

**9. Objections.** Any party objecting to final relief or to this Interim Order becoming final shall file and serve a written objection within fourteen

(14) days after entry of this Order, except that an official committee may object within fourteen (14) days after it is served with this Order. A timely objection will be heard at the Final Hearing unless otherwise ordered. If no timely objection is filed, the Court may make this Interim Order final without further hearing.

**10. Final Hearing.** The Final Hearing on the Motion and any timely objections will be held before the Honorable Maria L. Oxholm, Courtroom 1875, United States Bankruptcy Court, 211 W. Fort Street, Detroit, Michigan 48226, on **September 17, 2026 at 11:00 a.m.** The Debtor may continue to use cash collateral under this Order through the conclusion of the Final Hearing or further order, provided it remains in compliance with this Order. If there are no unresolved objections prior to the final hearing date, counsel may request that the final hearing be held telephonically.

**11. No Other Relief Granted; Reservation of Rights.** Except as expressly stated, nothing in this Order: (a) determines the amount, validity, extent, priority, perfection, enforceability, or avoidability of any claim, mortgage, lien, security interest, or assignment of rents; (b) releases any claim, defense, setoff, recoupment, turnover defense, or cause of action of the Debtor, the estate, or any party in interest; (c) grants a lien on any claim or cause of action arising under Chapter 5 of the Bankruptcy Code or its

proceeds; (d) waives any right under 11 U.S.C. § 506(c); (e) grants a priming lien, enlarges a prepetition lien, or grants cross-collateralization; (f) authorizes payment of prepetition debt except the adequate-protection payments expressly authorized by paragraph 5(a); (g) requires or prohibits any particular plan term; (h) finally determines whether Churchill completed demand-notice enforcement under Mich. Comp. Laws § 554.1058, or the effect of MUARA on the parties' ultimate rights; or (i) waives or adjudicates any right under 11 U.S.C. §§ 542, 544, 545, 547, 548, 549, 550, 551, or 552(b). All such rights are expressly reserved for the Final Hearing or other appropriate proceeding. The status-quo restriction in paragraph 3(a) expires at the conclusion of the Final Hearing unless continued by further order.

**Signed on August 24, 2026**

**/s/ Maria L. Oxholm**

**Maria L. Oxholm**
**United States Bankruptcy Judge**